UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: <br> THE NASH ENGINEERING COMPANY, <br> Debtor <br><br> GEORGE I. ROUMELIOTIS, CHAPTER 7 TRUSTEE FOR THE ESTATE OF THE NASH ENGINEERING COMPANY, <br> Plaintiff, <br><br> v. <br><br> NASH ENGINEERING HOLDINGS, LLC, ET AL., <br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. <br> 3:24-CV-00640 (JCH) <br><br><br><br><br><br><br> DECEMBER 11, 2025 |

**RULING ON MOTION TO DISMISS (DOC. NO. 138) AND MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT (DOC. NO. 141).**

**I.    INTRODUCTION**

The defendant, Lewis H. Nash Family Inc. ("LHNF"), brings this Motion to Dismiss the Second Amended Complaint ("SAC") against the plaintiff, the Trustee for the Estate of the Nash Engineering Company ("Trustee").  See Motion to Dismiss the Complaint ("Mot. to Dismiss") (Doc. No. 138).  Also, before the court is the Trustee's Opposition and Cross-Motion for leave to file a Third Amended Complaint.  See Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint and Plaintiff's Cross Motion for Leave to File Third Amended Complaint ("Pltf's Opp'n") (Doc. No. 141).  LHNF opposes the Cross-Motion.  See Reply Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def's Reply") (Doc. No. 143).  The Trustee replied in further support of his Cross-Motion.  See Plaintiff's Reply in Further Support of Cross Motion for Leave to File a Third Amended Complaint ("Pltf's Reply") (Doc. No. 146).

1

For the reasons stated below, the court grants LNHF's Motion to Dismiss; the court grants the Trustee's Cross-Motion to file a Third Amended Complaint and directs the plaintiff to docket it within seven days.

## II. BACKGROUND[1]

This case arises out of an action brought by the Bankruptcy Estate of the Nash Engineering Company against Nash Holdings, and to the Nash family shareholders. See Mot. to Dismiss at 2. The Nash Engineering Company was engaged in the manufacture of various industrial products from 1905 to 2002, and has been named as the defendant in thousands of asbestos lawsuits. Id. at 3. The Nash Engineering Company entered into a series of transactions divesting its assets, whereby the proceeds of such transactions were distributed to Nash Holdings. Id. The first alleged transaction, in March 2002, combined the Nash Engineering Company's manufacturing business with the business of Elmo vacuum technology GmbH, a subsidiary of Siemens AG. Id. Following this transaction, the Nash Engineering Company retained a 35.75% ownership stake in the combined entity, which thereafter operated as "Nash Elmo." Id. The second transaction, in July 2004, was a merger between Nash Elmo and Gardner Denver, Inc., where the Nash Engineering Company allegedly retained its ownership interest in Nash Elmo. Allegedly, around $59.7 million was paid to the Nash Engineering Company. Id. at 4. Between 2006 and 2009, the Nash Engineering Company sold the majority of its assets. Id. The Nash Engineering Company formed

---

[1] The court is quite familiar with the bankruptcy petition In re Nash and will therefore state the pertinent facts related only to this specific Motion. See e.g., ECF No.'s 33, 49, 59; see also 25-CV-55JCH ECH No. 64 (Ruling on Motion to Approve Compromise).

Nash Holdings between 2004 and 2011; subsequently it allegedly transferred the cash proceeds of these prior transactions to Nash Holdings.  Id.

The Trustee alleges that these transfers were fraudulent and deprived the Nash Engineering Company of assets necessary to meet its asbestos liability, and that these fraudulent transfers ultimately resulted in the Nash Engineering Company's bankruptcy petition.  Id.  Nash Holdings was allegedly owned by Shareholders[2], comprised of over 100 members of the extended Nash family, who had owned, through name, or as beneficiaries, various shares in the Nash Engineering Company.  Id.

Count V of the SAC seeks to recover subsequent transfers.  Id. at 5.  The Trustee believes that Count V intended to and is reasonably understood to encompass any third-party recipients of future transfer of shares, including entities such as LHNF that received payments from the Nash family trusts and family members.  See Pltf's Opp'n at 4-5.  LNHF disagrees and believes that the Trustee has not asserted any claim against LHNF.  See Mot. to Dismiss at 8.  The Trustee further asserts that, if the SAC is not clear, the proper remedy is an Amendment of the Complaint, hence the Trustee's Cross Motion for Leave to Amend the Complaint.  See generally Pltf's Opp'n.

## III.   LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2] All parties agree that the term "Shareholders," in this context, does not include LHNF.  See Mot. to Dismiss at 2-3, 9; Pltf's Opp'n at 4.

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the well-pleaded factual allegations in a Complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  See Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), a complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## IV.   DISCUSSION

It is very clear to this court, and the court is of the opinion it should also be clear to LHNF's counsel, what claim the plaintiff and debtor seek to assert in the Count V of the SAC.  Thus, this court is very reluctant to grant the Motion to Dismiss.  However, to a disinterested and reasonable person reading the SAC, Count V may not read as clearly.[3]  Thus, the court grants the Motion to Dismiss and simultaneously directs plaintiff's counsel to docket their draft Third Amended Complaint within seven days.

---

[3] Count V uses the word "transferee" regarding the conveyance of money between and amongst the defendants; a disinterested third party may not understand the intention of the plaintiffs in Count V to encompass the claim that the existing defendants are "transferors" as well.  See Pltf's Opp'n at 3.  ("While this phrase [Shareholders] was initially limited (based on the Trustee's information and belief at the time) to further transfers 'among' the Shareholders, discovery has revealed that the Shareholders also made subsequent transfers to people who are related to, or entities that are owned by or operated for the

The Trustee seeks to recover over $59.7 million in alleged fraudulent transfers made by the Nash Engineering Company to Nash Holdings, and, in turn, by Nash Holdings to the Shareholders.  See Pltf's Opp'n at 2.  There is no dispute that the Shareholders consist of over a hundred members of the Nash family, including the descendants of the founder Lewis H. Nash, as well as trusts and other entities created to hold assets for the Nash family.  Id.  Nash Holdings and the Shareholder defendants admitted that transfers were made from the Nash Engineering Company to Nash Holdings, and that distributions were thereafter made from Nash Holdings to the Shareholders.  Id.

The Trustee believes that, under Count V, he asserts claims against the Shareholders of Nash Holdings for recovery of subsequent fraudulent transfers by the Shareholders under Connecticut Uniform Fraudulent Transfer Act ("CUFTA") section 5-552i(b) and section 550(a)(2) of the Bankruptcy Code.  Id. at 2-3.  Count V of the SAC states:

COUNT V
Recovery of Nash Holdings Transfers from Subsequent Transferees
(vs. Shareholders)
Conn. Gen. Stat. § 52-552i(b) and 11 U.S.C. § 550(a)(2)

85. The Trustee reasserts and realleges the foregoing paragraphs of this Complaint as if fully set forth herein.
86. The Nash Holdings Transfers were further transferred by Nash Holdings to the Shareholders, and may have been further transferred by Shareholders among themselves, as a result of which each of the Shareholders is an immediate and/or mediate transferee of the Nash Holdings Transfers.
87. Each of the Shareholders did not receive the Nash Holdings Transfers in good faith and for reasonably equivalent value.
88. Accordingly, the Nash Holdings Transfers, or the value of such transfers, are recoverable from each of the Shareholders pursuant to 11 U.S.C. § 550(a)(2).

---

benefit of, certain Nash family member Shareholders who are existing defendants to this action (such subsequent transferees, the 'Affiliated Transferees')."

Under the Bankruptcy Code and CUFTA, the recipients of fraudulent transfers can be made defendants in the original action. See Bankruptcy Code section 550(a)(2); CUFTA section 5-552i(b).  The Trustee argues this Count is broad enough to reference both the Shareholders themselves and any further transfers which may have been made by Shareholders themselves to further "transferees." Id. at ¶ 85-86.  Such transfers include those alleged to have been made to LHNF.  The Trustee claims that discovery has revealed that the Shareholders made subsequent transfers to transferees who are related to, or entities owned by or operated for the benefit of, certain Nash family member shareholders who are defendants to this action already, a group he calls the "Affiliated Transferees." See Pltf's Opp'n at at 3.  He claims LHNF should know, through its own records and through knowledge of its company officers and agents, all of whom are Nash family members and existing Shareholder defendants, that LHNF falls into this category of Affiliated Transferees. Id. at 4.  The Trustee argues that, where LHNF is alleged to be a subsequent transferee of funds from one or more of the Shareholders following their receipt of funds from the Nash Holdings transfer, the Trustee has a right and duty to assert a claim under CUFTA section 5-552i(b) and section 550(a)(2) of the Bankruptcy Code. Id.

      LHNF asserts that there is no way to infer that the Trustee is entitled to any relief against LHNF. See Mot. to Dismiss at 8.  The crux of LHNF's argument is the word "Shareholders" limits Count V and that Count V excludes LHNF. Id. at 9.  Additionally, LHNF asserts that the Trustee is moving too slow in the bankruptcy proceedings.[4] Id. at

---

[4] While the court agrees this case has gone on too long, it has been held up by "foot-dragging" defendant delays during discovery. See, infra, Part V. However, this court notes that, while the case has been on the docket for over a year, it is case with over 100 defendants.

6

9-10; Def's Reply at 6.  LHNF implies that the Trustee is taking advantage of the court by submitting multiple amended complaints.  See Id. at 10; Def's Reply at 2.  Finally, LHNF asserts that any proposed amended complaint should not be allowed for two reasons, (1) that the Trustee is simply after valuable property that LHNF owns, and (2) that the alleged transfers of only $90,000 from shareholders in Nash Holdings to LHNF cannot justify the expenditure of fees to litigate this action.[5,6]  See Def's Reply at 2.

LHNF asserts that the Trustee should be required to "identify with specificity individuals involved in any alleged transfers, the property allegedly transferred, the consideration paid, the amounts transferred, and the date and purpose of each such alleged transfer, as well as how it would be either in good faith or for reasonably equivalent value."  See Mot. to Dismiss at 11.  This court emphatically rejects such a suggestion.  Bankruptcy Trustees are provided great latitude in their duties.  Section 704(a) of the Bankruptcy Code sets forth the duties of the Trustee, including to "collect and reduce to money the property of the estate for which the trustee serves," and to "investigate the financial affairs of the debtor."  See 11 U.S.C. section 704(a)(1), (4).[7]  A

---

[5] To the parties and counsel asserting this argument, $90,000 dollars, in their opinion, may be an unjustifiably small amount to attempt to recover.  It is not a "paltry" sum to individuals injured, suffering, and widowed by the defendants' alleged conduct.  While imperfect, the law attempts to right the smallest of wrongs by allowing injured parties to pursue those allegedly responsible.  The court takes pointed umbrage at the audacity of these apparently well-funded parties to suggest that $90,000 is so trivial as to not merit pursuit or their time, or the time of the justice system.

[6] The court notes that the $90,000 figure is what plaintiffs can now allege in the Third Amended Complaint; it is likely to increase after further and full discovery.  See Pltf's Reply at 7; see also Plaintiff's Draft Third Amended Complaint (Doc. No. 141-1).

[7] In 2005, Congress amended section 547 to establish minimum thresholds for a trustee's pursuit of preference claims in cases filed by individual debtors with primarily consumer debts ($600), and cases filed by debtors with primarily non-consumer debts ($5,000).  See 11 U.S.C. section 547(c)(8), (9).  There were no thresholds established for other categories of avoidance claims under the Bankruptcy Code.  Under the principals of statutory interpretation, when one section of a statute includes particular language that is omitted in another section of the same act, Congress is presumed to have acted intentionally and purposely.  See Russello v. United States, 464 U.S. 16, 23 (1983).  Therefore, the dollar amount of the Trustee's fraudulent transfer claim against LHNF bears no relevance in this case.

Chapter 7 trustee has exclusive standing to pursue avoidance actions, including fraudulent transfer claims.  See Tronox Inc. v. KerrMcGee Corp. (In re Tronox Inc.), 855 F.3d 84, 103 (2d Cir. 2017).  Section 550 of the Bankruptcy Code authorizes a trustee to recover transfers from both initial and subsequent transferees.  See In re Bernard L. Madoff Inv. Sec. LLC, 12 F.4th 171, 181 (2d Cir. 2021).  Trustees are not required to identify every subsequent transferee before discovery, a burden inconsistent with section 550(a) and Circuit precedent.  See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018) (the "plaintiff's burden at the pleading stage 'does not require dollar-for-dollar accounting' of the exact funds at issue.").  This court wants to firmly quell such a requirement, and this court herein makes clear that no pleading, particularly in light of the stalled discovery, see, supra, at 6, requires such a specificity or evidence.[8]  See Fed. R. Civ. P. 7, 8(a)2; Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.), 403 F.3d 43, 56 (2d Cir. 2005); see also Picard v. Madoff (In re BLMIS), 458 B.R. 87, 119 (Bankr.S.D.N.Y.2011); Picard v. Merkin (In re BLMIS), 440 B.R. 243, 269 (Bankr.S.D.N.Y.2010); SIPC v. Stratton Oakmont, Inc., 234 B.R. 293, 317–18 (Bankr.S.D.N.Y.1999).

## V.    ATTORNEY (MIS)CONDUCT

This court wants to make certain all parties understand the following.  First, Judge Garcia has spent great effort and a significant amount of her time to move discovery along at a prompt pace.  See e.g., ECF No.'s 25, 29, 34, 42, 55, 61, 65, 69, 81, 86, 98, 101, 109, 115, 135.  Despite, Judge Garcia's efforts, defendants have

---

[8] Based on the defendant's preliminary discovery responses, the Trustee added nine additional defendants, including LHNF.  See Pltf's Opp'n at 11.  No other defendant added to the action through the SAC has joined LHNF's motion; in fact, two of the newly added defendants have already filed answers to the SAC.  Id.

continued to drag out the process.  Id.  This court will no longer tolerate discovery "foot-dragging" by defendants.

Second, LNHF inappropriately declares that this litigation is "improper harassment."  See Def.'s Reply at 2.  This type of language in a brief is unacceptable.  The court strikes this language from all submissions.  This language is not a legal argument, nor is it even ignorant hyperbole.  This court, in the strongest possible way, condemns the use of such language.

This written warning puts counsel on notice that, if such actions like this continue, sanctions are highly likely.

## VI.     CONCLUSION

For the reasons stated above, the court grants LNHF's Motion to Dismiss (Doc. No. 138).  The court grants the Trustee's Cross Motion to File a Third Amended Complaint (Doc. No. 141) and directs the plaintiff to docket it within seven days.

**SO ORDERED.**

Dated at New Haven, Connecticut this 11th day of December 2025.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge